UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

Austin M.[1],                                )
                                             )
        Plaintiff,                           )
                                             )
    v.                                       )      CIVIL NO.  3:20cv457
                                             )
ANDREW SAUL,                                 )
Commissioner of Social Security,             )
                                             )
        Defendant.                           )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for  Disability

Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. § 423(a), §

1382c(a)(3).  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the

[Commissioner] shall file a certified copy of the transcript of the record including the evidence

upon which the findings and decision complained of are based.  The court shall have the power to

enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the [Commissioner], with or without remanding the case for a

rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by

substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less

than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

_____

    [1]  To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.    The claimant has not engaged in substantial gainful activity since December 20, 2016, the application date (20 CFR 416.971 *et seq.*).

2.      The claimant has the following severe impairments: bilateral femur osteonecrosis, bilateral knee osteoarthritis, history of leukemia with bilateral hip replacements, and ulcerative pancolitis (20 CFR 416.920(c)).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 16.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  He can never climb ladders, ropes, or scaffolds.  He can occasionally push and pull with the bilateral lower extremities. He can occasionally overhead reach with the bilateral upper extremities.  He requires ready access to the restroom, but the need to use the restroom can be accommodated by the 15-minute morning and afternoon breaks and the 30-minute lunch period.  He can have no exposure to hazards, such as unprotected heights or dangerous moving machinery.

5.      The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.      The claimant was born on July 1, 1993 and was 23 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since December 20, 2016, the date the application was filed (20 CFR 416.920(g)).

(Tr. 14-33).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability

3

benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on December 8, 2020. On February 9, 2021, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on February 21, 2021. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Christopher Hall, M.D., South Bend Medical Clinic/Beacon Health Group, was Plaintiff's primary care provider (PCP) from December 2015 to June 2016; exams showed decreased range of motion and pain in the spine; Dr. Hall diagnosed low back pain. (Tr. 370-72.) In June, Plaintiff

had continued low back pain, aggravated by exertion, prolonged standing, and anxiety. (Tr. 571-73.)

On February 3, 2016, Plaintiff saw Terry A. Vik, M.D., Riley Hospital for Children, where he had been treated for bilineage leukemia. (Tr. 278-85.) Although his leukemia was in remission, Plaintiff continued to suffer from "several chronic issues" and complications; on exam, he could not "fully supinate" his arms bilaterally and could not pronate the left arm. (Tr. 278-82.) Diagnoses included: (1) severe AVN (avascular necrosis) in both knees (recommended knee replacement consult) and hips; (2) chronic loose stools from history of ulcerative colitis (status post colectomy); (3) restricted ROM (range of motion) in the bilateral arms and shoulders; (4) chronic fatigue and decreased stamina; and (5) back pain secondary to leg length discrepancy. (Tr. 283-84.)

On July 11, 2016, Plaintiff saw Jeffrey Yergler, M.D., South Bend Orthopaedics Associates, for bilateral knee pain, left greater than right, frequent diarrhea, limited use and stiffness of the joints, back pain, swelling in the extremities, and fatigue. (Tr. 326-28.) On exam, he had an antalgic gait, left knee swelling, tenderness, pain with movement and limited range of motion despite unremarkable x-rays. Dr. Yergler diagnosed bilateral knee pain and referred Plaintiff for a rheumatoid arthritis evaluation. (Tr. 327-28.) Dr. Yergler administered a steroid injection in both knees in November 2016. (Tr. 320-22.) On October 2, 2017, Dr. Yergler wrote a letter stating that he began seeing Plaintiff in July 2016 for knee pain, left greater than right.  Dr. Yergler had advised Plaintiff to treat his knee pain conservatively, as he still had some cartilage in the joints. (Tr. 666-67.) Dr. Yergler saw Plaintiff four times between July 2016 and February 2017; he was given cortisone injections in his knees on three occasions. (Tr. 666.) Dr. Yergler

opined that Plaintiff has "multiple medical problems at a young age that would make it difficult for him to work," including bilateral hip replacements as a teenager, avascular necrosis in his knees, chronic pain management, and a history of ulcerative colitis with past bowel surgeries. (Tr. 667.) Dr. Yergler noted that due to his conditions, Plaintiff "would likely miss two or more days [of work] per month . . . and would be off task in excess of 20% of the time." (*Id.*)

On July 13, 2016, Plaintiff saw John J. Cavanaugh, M.D., South Bend Clinic. Plaintiff was "tired all the time," had difficulty sleeping with 3 to 4 bowel movements every night, and knee pain. (Tr. 631-34.) Dr. Cavanaugh diagnosed Vitamin D deficiency, inadequately controlled. (Tr. 631.) In February 2017, Plaintiff had cramping and diarrhea, and slight tenderness in the calves and thighs on exam. (Tr. 600-03.) In September 2017, Plaintiff had frequent diarrhea and unexpected weight loss; Dr. Cavanaugh diagnosed weight loss of unclear reason. (Tr. 594-99.) In April 2018, Plaintiff continued to experience weight loss and 6 to 7 bowel movements per day. (Tr. 792-95.) In December 2018, Dr. Cavanaugh noted Plaintiff's thin appearance, tachycardia, and stationary tremors 2+ on exam; diagnoses included tachycardia (possibly due to anxiety). (Tr. 788-91.)

On July 22, 2016, Plaintiff saw J. Andrew Parr, M.D., for follow up on his bilateral total hip arthroplasties (performed in 2007); Plaintiff had increased pain with activity and difficulty ambulating long distances. (Tr. 307-08.) Past MRIs showed avascular necrosis in both knees, left worse than right, and previous steroid injections did not provide significant, prolonged relief. (*Id.*) Dr. Parr noted that Plaintiff was on a "significant amount of pain medication"; the exam revealed mild tenderness in both knees. (*Id.*) X-rays of the knees were consistent with avascular necrosis. (Tr. 464) Dr. Parr discussed knee replacement and cartilage transplants, and advised Plaintiff to

consult a specialist because his was a "pretty complex problem." (Tr. 307-08.) An August 2, 2016
MRI showed stable osteonecrosis in the left femur and tibia compared to an October 2012 MRI.
(Tr. 318-19.)

On August 10, 2016, Plaintiff saw rheumatologist Natalie Sessions, D.O., Beacon Medical
Group, for evaluation of possible arthritis in the knees. Plaintiff complained of pain in the
shoulders, back, and elbows, swelling and aching in both knees, and greater than usual fatigue.
(Tr. 555-62.) On exam, he had tenderness in the thoracic and lumbar spine, right hip, and
mid-thigh; diagnoses included: (1) diffuse arthralgia associated with chronic pain, history of
ulcerative colitis, chronic high steroid doses, and history of AVN of the hips and (2) vitamin D
deficiency, persistently low despite supplementation. (Tr. 557-58.) An August 29, 2016 x-ray of
the left shoulder was unremarkable (Tr. 608); a lumbar x-ray showed curvature of the lower
thoracic spine (Tr. 613). On September 6, 2016, Plaintiff had ongoing pain in the elbow, back,
hips, and knees, muscle weakness and swelling, and anxiety; he had reduced and painful range of
motion in the left elbow on exam and Dr. Sessions diagnosed left elbow pain (ordered PT) and
myalgia. (Tr. 552-54.)

On October 11, 2016, Plaintiff saw Ralph F. Carbone, Jr., M.D., his pain management
specialist, reporting constant pain in his knees that keeps him awake and was not alleviated by
medication. Dr. Carbone diagnosed knee pain and osteoarthritis and continued Dilaudid and
Methadone. (Tr. 750, 786.) On November 3, Plaintiff reported pain 6/10; Dr. Carbone diagnosed
lower leg joint pain and osteoarthrosis, localized, primary, lower leg. (Tr. 420.) In February 2017,
Plaintiff was "doing much better" and looked "more stable." (Tr. 748.) In March, Plaintiff had
crepitance, antalgic gait, and tenderness in the right piriformis and left sacroiliac joint on exam.

(Tr. 781.) Between April and July 2017, Plaintiff reported pain from 5 to 8/10; diagnoses and medications remained unchanged, although Dr. Carbone also noted "chronic pain." (Tr. 474-75, 477-78, 486-87, 782-83.) In September 2017, Plaintiff's Dilaudid dosage was increased due to worsening pain. (Tr. 775.) In November, Dr. Carbone wrote a note indicating that Plaintiff could not lift, stand, bend, or twist for any extended period of time (Tr. 772-73) and added a diagnosis of pelvic joint pain (Tr. 766-67). In January 2018, Plaintiff had pain 6/10, antalgic gait, abnormal sensory response, and tenderness in the right piriformis and both sacroiliac joints on exam. (Tr. 760-61.) In March 2018, his pain was unchanged. (Tr. 754-55.) In August 2018, he exhibited crepitance on exam. (Tr. 744-45.) In October and November 2018, Plaintiff had "pain everywhere" and he had an antalgic gait. (Tr. 732-33, 736-37.)

Plaintiff saw Thomas R. VanderHeyden, Jr., D.O., Michiana Gastroenterology on November 14, 2017. Plaintiff reported weight loss due to lack of appetite and diarrhea for the past several weeks. (Tr. 697-99.) Dr. VanderHeyden diagnosed chronic ulcerative pancolitis and prescribed Flagyl. (Tr. 698-99.) A sigmoidoscopy and biopsy were performed on December 7, 2017.4 (Tr. 592-93.) In February 2018, Dr. VanderHeyden prescribed Lomotil for diarrhea. (Tr. 583-85.) In August 2018, Plaintiff's weight had increased slightly; he was having 6 bowel movements a day. (Tr. 695-96.)

In December 2017, Plaintiff returned to his PCP with ongoing diarrhea, malaise, fatigue, and low appetite, and reported 8 to 10 bowel movements per day, up from 6 per day; the provider diagnosed diarrhea. (Tr. 526-27.) At an appointment with Dr. Hall in February 2018, Plaintiff had decreased energy, poor sleep, weight loss, diarrhea, and abdominal pain. (Tr. 523-24.) In April 2018, Plaintiff had decreased energy, fatigue, trouble falling asleep, worsening weight loss despite

8

eating more, and loose stools approximately 8 times per day. (Tr. 712-13.) In October 2018, Dr. Hall diagnosed anxiety and prescribed Alprazolam. (Tr. 701-03.)

On April 20, 2018, at the request of the State Agency, Plaintiff underwent a psychological consultative examination performed by Douglas D. Streich, Ph.D. (Tr. 651-55.) Mental status exam revealed (1) low-average (a) abstraction capacities, (b) recall of simple auditory data, calculation abilities, and (c) basic judgment skills, (2) low-average to average fund of data, (3) average information processing abilities, and (4) deficits in short-term memory retrieval. (*Id*.) Dr. Streich concluded that Plaintiff had "mild memory retrieval deficits and some slight slowed cognitive processing speed"; he concluded that Plaintiff could monitor his funds. (Tr. 654-55.)

On April 23, 2018, Plaintiff underwent a physical consultative examination performed by Ralph Inabnit, D.O., at the request of the State Agency. (Tr. 658-64.) Dr. Inabnit noted that Plaintiff was frail, thin, and cachectic (*i.e.*, physical wasting) and reported weight loss and pain in his knees; Plaintiff stated he could walk half a mile and lift up to five pounds. (Tr. 658.) Dr. Inabnit concluded that there was evidence of avascular necrosis of the hips and the knees (by history), anxiety, ulcerative colitis, history of volume depletion, and insomnia. (Tr. 663-64.)

In May 2017, a medical consultant opined Plaintiff could perform sedentary work. (Tr. 73-83.) On reconsideration, another consultant assigned a restricted range of light work. (Tr. 85-99.) Psychological consultants opined that Plaintiff did not have any medically- determinable mental impairments. (Tr. 73-78, 85-94.)

Plaintiff completed Function Reports in January 2017 and February 2018. (Tr. 202-09, 225-32.) Plaintiff's grandmother completed Third-Party Function Reports in January 2017 and March 2018. (Tr. 191-98, 242-49.)

9

At the hearing before the ALJ, Plaintiff testified that he has ulcerative colitis, which causes him to go to the bathroom up to 10 times a day (4 to 5 times at night) and keeps him up at night. (Tr. 42.) Although his colitis is "stable," he still uses the bathroom 5 or 6, and as many as 20, times per day, approximately every two hours, for a few minutes to 45 minutes at a time. (Tr. 46-47, 65.) At his past job, he only stood 45 minutes to an hour at a time (3 hours in a 6-hour shift) and was able to sit as needed. (Tr. 44-45.) He has no energy, his left knee and elbow throb "constantly" due to avascular necrosis (Tr. 46); on average, his knee pain is 9/10; injections lessen the pain temporarily to 4-5/10. (Tr. 55-56.) He has restricted motion in his left shoulder and pain in both elbows aggravated by rotation, pressure, and stretching his arms out. (Tr. 49-51.) He has throbbing pain in his back that worsens with standing and with daily activities. (Tr. 55.) He cannot bend due to his hip replacements. (Tr. 55.) He lies down most of the day and elevates his leg to reduce swelling. (Tr. 56.) Any activity makes the pain in both knees worse. (Tr. 57.) He takes Dilaudid for pain. (Tr. 57-58.) He can stand for 15-20 minutes before he must lean on something or sit down; sometimes he uses a scooter at the store. (Tr. 59.) His mother pushes him in a wheelchair for longer distances. (Tr. 60.) Sitting for hours without repositioning increases his pain. (Tr. 61.) Fatigue makes it difficult to focus. (Tr. 62.) Social interactions cause anxiety and shortness of breath. (Tr. 63.) On a bad day (at least once per week), he sleeps all day; on a good day (once a week) he spends time with his family, watches TV, and may go to the store. (Tr. 64-65.) He naps 2-3 hours per day and does not do any chores; he drives only 15-20 minutes. (Tr. 65-66.)

Plaintiff's mother testified that Plaintiff uses the bathroom 4 to 5 times during the night. (Tr. 67.) He had to withdraw from college classes because he could not regularly attend due to

fatigue and pain. (Tr. 68.) His biggest problem is fatigue. (*Id*.) He sleeps constantly. (Tr. 68-69.) He would not be able to sit for 2 to 3 hours without elevating his leg or walking around. (*Id*.) He takes breaks to lie down for about 30 minutes at a time. (Tr. 69.)

The Vocational Expert (VE) testified in response to a hypothetical question consistent with the ultimate residual functional capacity (RFC). (Tr. 70-71.) She testified that the individual could work as Inspector, Sorter, and Addressing Clerk. (Tr. 71.) Being off task more than 10% of the workday, having more than two absences per month on an ongoing basis, or arriving late or leaving early would preclude all work. (*Id*.)

In support of remand, Plaintiff argues that there are two critical defects in the ALJ's Decision. First, Plaintiff contends that the Decision is based on cherry-picked evidence, highlighting normal findings or evidence of normal functioning, and overlooking objective abnormalities or difficulties in functioning.  Second, Plaintiff argues that the ALJ failed to provide an accurate and logical bridge from the evidence to the conclusion. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)) ("We require that an ALJ build an 'accurate and logical bridge from the evidence to [his] conclusion' [to allow for] meaningful judicial review.").

Plaintiff argues that the ALJ's errors are reflected in the ALJ's analysis of Plaintiff's mental impairments. At Step Three, the ALJ assessed no limitation in Plaintiff's ability to understand, remember, and apply information, despite difficulty completing tasks and taking medications without reminders, because he can "shop, drive, read, and play games." (Tr. 13.) Plaintiff points out that the ALJ's assessment ignores a host of evidence. For example, it ignores Dr. Streich's finding that Plaintiff has "mild memory retrieval deficits and some slight slowed cognitive

processing speed." (Tr. 654-55.) It overlooks Plaintiff's long treatment history with prescription narcotics (Dilaudid and Methadone). (Tr. 750, 772-73, 775, 786); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(C)(2). It ignores significant qualifications inherent in the performance of the activities highlighted by the ALJ. (Tr. 65-66 -the longest he drives is 15 to 20 minutes; Tr. 193-94 -he needs verbal reminders to take care of himself and take his medications; his grandmother usually accompanies him when he goes grocery shopping; he can shop only by holding onto the cart or using a scooter; Tr. 205-06 - shopping takes hours and he has to use a scooter; some days he gets "really tired" which affects his ability to engage in hobbies; Tr. 229 - some days he does not do activities at all because of pain, sadness, or fatigue; he needs someone with him at doctor appointments "to help [him] remember" and "follow instructions").

Plaintiff further argues that the ALJ ignored overwhelming evidence of Plaintiff's chronic fatigue. (Tr. 65-66, Tr. 68 , Tr. 209, Tr. 225-26, Tr. 232, Tr. 283, Tr. 326, Tr. 555, Tr. 526 , Tr. 523, Tr.712). Plaintiff concludes that all of this evidence shows that he suffers from greater limitations in this area of mental functioning.

Similarly, the ALJ assigned a mild limitation in concentration, persistence, or pace because, although Plaintiff stated that he has difficulty completing tasks and his pain and fatigue affect his ability to focus, he still is able to watch TV, read, play games, and use the internet. (Tr. 13.) Plaintiff points to the following evidence:  Tr. 62 (fatigue makes it difficult to focus), Tr. 64-65 (on a bad day, Plaintiff sleeps all day), Tr. 230 (concentration issues and chronic fatigue caused him to withdraw from college courses; his attention span "depends on how [he] feel[s] that day"), Tr. 247 (he can follow instructions if it does not take too long and he feels well enough to stay alert). Plaintiff further notes that his abilities in this area are also dependent on his pain and other

12

conditions. Tr. 46 (colitis and stomach pain keep Plaintiff up at night), Tr. 57-58 (stopped

Methadone because it no longer alleviated his pain), Tr. 283-84 (diagnosed with back pain), Tr.

307-08 (Plaintiff had increased pain with activity and difficulty ambulating long distances; Dr. Parr

noted that he was on a "significant amount of pain medication"), Tr. 326-28 (diagnosed with

bilateral knee pain after an abnormal exam), Tr. 370-72 (diagnosed with low back pain), Tr. 420

(diagnosed with lower leg joint pain and osteoarthritis, localized, primary), Tr. 474-75 (Dr.

Carbone often noted "chronic pain" in treatment notes), Tr. 555-62 (had pain in the shoulders,

back, and elbows, and swelling and aching in both knees; diagnosed with left elbow pain after

abnormal exam), Tr. 667 (Dr. Yergler opined that Plaintiff had multiple conditions that would

make it difficult for him to work, including bilateral hip replacements, avascular necrosis in the

knees, chronic pain management, and ulcerative colitis), Tr. 766-67 (diagnosed with pelvic joint

pain). Plaintiff also notes that he suffers from anxiety, which magnifies his physical conditions. Tr.

232 (Plaintiff was depressed due to his physical impairments and fatigue, had a "down" mood, and

had recently lost a lot of weight), Tr. 788 (Dr. Cavanaugh noted that Plaintiff's tachycardia could

be caused by his anxiety); *see also* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(B)(6) (mental

conditions may result from a preoccupation with having or acquiring a serious medical condition).

Plaintiff maintains that the above evidence shows that he suffers from at least a moderate limitation

in concentration, persistence or pace.

  The ALJ found that Plaintiff has no limitation in his ability to adapt and manage himself,

believing his difficulties were mostly due to his physical limitations. (Tr. 13.) Plaintiff contends that

the ALJ's conclusion is not supported by the evidence. Tr. 204 (mother reminds him to engage in

personal care and take his medications), Tr. 225 (on a "good day" he tries to visit family just to

13

get out of the house), Tr. 227 (he does not cook due to fatigue, among other issues), Tr. 229

(some days he cannot engage in any hobbies because of fatigue or sadness; he needs someone with

him at doctor appointments to help him remember and follow instructions), Tr. 230 (he does not

see friends anymore because he is in pain and is "not able to move forward" like they have; he

could not handle college classes due to fatigue and pain), Tr. 231 (his life is stressful because of

his conditions; it is hard to keep up with a routine because his treatment always changes), Tr. 232

(his fatigue and lack of energy is "depressing" and he just wishes he "felt good").

An ALJ may not consider daily activities, without looking at the qualifications inherent in

those activities. *Thompson v. Berryhill*, 722 F. App'x 573, 582 (7th Cir. 2018); *Childress v.

Colvin*, 845 F.3d 789, 792 (7th Cir. 2017). Plaintiff argues that here, as with other areas of

functioning, the ALJ simply "cherry picked" the evidence that favored a finding of only a mild

limitation, while ignoring evidence favorable to Plaintiff.

Plaintiff contends that the above evidence, which the ALJ did not consider, highlights that

the ALJ engaged in cherry-picking. *Baldwin v. Berryhill*, 746 F. App'x 580, 583 (7th Cir. 2018)

("This record, unfortunately, reveals that the ALJ cherry-picked the evidence in determining that

Baldwin's condition improved after May 15, 2014."); *Mischler v. Berryhill*, 766 F. App'x 369,

374 (7th Cir. 2019) (ALJ erred in cherry-picking two notations of improvement but ignoring

subsequent treatment records showing worsening symptoms). Plaintiff further contends that the

ALJ's cherry-picking of normal functioning also highlights a fundamental misunderstanding of

mental illness. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("But by cherry-picking . . .

the ALJ demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental

illness."); *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010) ("Many mental illnesses are

14

characterized by 'good days and bad days,' rapid fluctuations in mood, or recurrent cycles of waxing and waning symptoms."). This Court agrees with Plaintiff that the ALJ erred by cherry-picking the evidence.  Thus, remand is required.

Next, Plaintiff argues that the ALJ erred at Step Three.  Step Three, which can be dispositive, requires consideration of whether a claimant's conditions, individually or in combination, (1) meet or (2) equal a listed impairment. *See* 20 C.F.R. §§ 404.1520, 404.1525, 404.1526.  Plaintiff claims that the ALJ failed to analyze relevant, dispositive evidence when she concluded that Plaintiff's conditions did not meet or medically equal a Listing. The ALJ's consideration consisted of identifying the requirements of Listing 1.02 and concluding that neither it nor Listing 5.06 was met or medically equaled. (Tr. 14.) This is exactly the kind of perfunctory, boilerplate Step Three analysis the Seventh Circuit has found inadequate. *Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015); *see also Kastner v. Astrue,* 697 F.3d 642, 647-48 (7th Cir. 2012) (ALJ's cursory Listing analysis failed to articulate rationale for denying benefits when record supported finding in claimant's favor). Moreover, the State Agency consultants did not assess Plaintiff's ulcerative pancolitis under any Listing. Thus, there is no medical opinion related to equivalence premised on all the impairments in combination, and the ALJ impermissibly relied on her own layperson's opinion.  *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJs "must not succumb to the temptation to play doctor and make their own medical findings"); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (ALJs may not rely on their own opinions to fill gaps).

Although Plaintiff's individual impairments may not meet an individual listing on their own, there are "closely analogous" listings that the combination of impairments could medically equal.

*See* 20 C.F.R. § 404.1526(b)(3) ("If you have a combination of impairments, no one of which meets a listing (see § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing."); *Clark v. Astrue*, No. 2:11–CV–300–PRC, 2013 WL 1213141, at *11 (N.D. Ind. Mar. 22, 2013) (remanding and directing ALJ to consider whether the cumulative effect of claimant's impairments medically equaled any listed impairment).

Plaintiff's bilateral femur and knee osteoarthritis is evaluated under Listing 1.02(A). The record shows that Plaintiff has most, but not all, of the abnormal signs, symptoms, and laboratory findings therein:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b. . . .

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.02. Here, Plaintiff has a gross anatomical deformity (*i.e.*, instability), as he has been diagnosed with avascular necrosis in his knees (Tr. 278; 307-08), a disorder that weakens the bones due to loss of blood supply to the bone, which causes the bone tissue to die and possibly collapse; has demonstrated crepitance and antalgic gait on exam (Tr. 327, 732, 744, 781); and, uses a walker at home, a wheelchair outside the house when he would have to walk long distances, and a scooter at the grocery store. (Tr. 245, 231, 248.) He has chronic joint pain and stiffness. (Tr. 46, 55-56, 326, 552, 555-56, 75.) Exams showed painful and

limited range of motion of the knees. (Tr. 327)

Plaintiff argues that there is other evidence that could be of equivalent significance to the abnormality not documented in Listing 1.02. *See* 20 C.F.R. § 404.1526. For example, Plaintiff has received numerous injections in his knees which do not provide prolonged relief. (Tr. 55-56, 307, 321, 605, 666.) He takes prescription narcotics for his pain (Tr. 57-58, 750, 772-73, 775, 786), lies down most of the day, and elevates his leg to reduce swelling. (Tr. 56.) Plaintiff also suffers from painful avascular necrosis in his arms and both hips (Tr. 55, 552, 558) despite a bilateral hip replacement in 2007 (Tr. 307) that limits certain activities (Tr. 49-51, 55) Finally, avascular necrosis is a degenerative disease that will likely require him to have bilateral knee replacement in the future.  (Tr. 278, 283-84, 307-08, 606, 666).

However, the ALJ's Decision fails to provide due consideration of the "functional limitations" caused by these conditions and symptoms at Step Three. Plaintiff argues that this evidence is dispositive and shows that Plaintiff's knee issues, particularly in combination with his other impairments (history of leukemia with bilateral hip replacements and ulcerative pancolitis), are of at least equal medical significance to Listing 1.02 such that he could medically equal that listing at Step Three. *See Garner v. Berryhill*, No. 1:18cv211, 2019 WL 1324605, at *7 (N.D. Ind. Mar. 22, 2019) ("That the Plaintiff never exhibited a particular item of the listing criteria is a perfectly legitimate explanation of why she does not meet [a listing], but it does not provide this court with any ability to review whether her combined impairments equaled [the listing].")

In response, the Commissioner asserts that evidence of treatment and reported symptoms cannot "substitute[] for objective medical findings."  However, Plaintiff is not required to prove objective equivalence of each requirement of a specific listing. Rather, his burden is merely to

produce evidence in support of his claim; he need not prove equivalence. *See Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) ("It is true that Scott bears the burden of producing evidence of her impairments . . . but she did produce evidence in the form of her own testimony as well as medical evidence that tremors make it difficult for her to use her hands.")(internal citations omitted); *Hartley v. Berryhill,* No. 1:17-cv-1043- TWP-TAB, 2018 WL 2173682, at *5 (S.D. Ind. May 10, 2018) ("[T]he claimant's burden [at Step Three] is merely to produce evidence in support of the claim, not to prove equivalence.").

Plaintiff argues that he presented evidence that could be of equal medical significance to the unmet criterion of Listing 1.02, including (1) failed injections, (2) heavy prescription narcotics, (3) the need to lie down most of the day and elevate his leg, (4) avascular necrosis in the arms and hips that limits his activities, and (5) the likelihood that Plaintiff will require bilateral knee replacement in the future due to avascular necrosis in his knees. *Clayton C. v. Saul*, No. 1:19-cv-2140-TAB-JMS, 2020 WL 1921507, at *12 (S.D. Ind. Apr. 21, 2020) ("The ALJ's perfunctory analysis . . . combined with significant evidence of record relevant to an evaluation of the listing requires remand.").

The Commissioner also contends that Plaintiff has not presented evidence of the inability to ambulate effectively.  However, as Plaintiff points out, numerous exams showed antalgic gait. (antalgic gait observed in July 2016, March 2017, and January, October, and November 2018). Plaintiff also uses a walker, wheelchair, or scooter both in and outside his home, particularly at the grocery store.  20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00(B)(2)(b) ("inability to carry out routine ambulatory activities, such as shopping and banking," is an example of ineffective ambulation). Further, Plaintiff has chronic joint pain and stiffness and has demonstrated limited

18

range of motion, swelling, and tenderness in the knees on exam.

However, the ALJ did not consider any of this at Step Three, and the Commissioner "may not advance an explanation that the [ALJ] never made [herself] and may not attempt to support the decision with evidence the [ALJ] apparently did not consider." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (citations omitted). Thus, even if the Commissioner's assertion that Plaintiff did not show ineffective ambulation were supported, his analysis was not provided by the ALJ and, thus, fails.

The Commissioner also argues that Plaintiff cannot show equivalence to Listing 1.02 through the combination of his conditions. However, Agency regulations specifically state that if no individual impairment meets a listing, the combination of impairments will be considered under a closely analogous listing. 20 C.F.R. § 404.1526(b)(3) (citing 20 C.F.R. § 404.1525(c)(3)). "If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing." *Id*. Plaintiff points out that, here, there is evidence that his conditions are interrelated. Specifically, avascular necrosis throughout his body, caused by childhood leukemia treatments, causes pain and limitations that compound his knee issues, including inability to ambulate effectively. This Court has specifically found that musculoskeletal impairments, considered in combination, could equal a Listing under Listing 1.00. *See, e.g., Roberta F. v. Saul*, No. 1:20cv63, 2021 WL 321447, at *8 (N.D. Ind. Feb. 1, 2021) (recognizing that claimant's knee osteoarthritis under Listing 1.02, when considered in combination with her lumbar spine issues, could equal Listing 1.04 and remanding for expert determination as to whether claimant's conditions medically equaled a listing).

Plaintiff argues that this case is analogous to *Jennifer M. L. v. Berryhill*, No. 1:17-cv-03362-TWP-DML, 2018 WL 6011212, at *7-10 (S.D. Ind. Nov. 16, 2018), in which the court held that the ALJ's perfunctory analysis of Listing 1.02, coupled with evidence that the claimant could meet or equal the Listing, warranted remand. The court stated:

> [T]he ALJ's recitation of some of the evidence—hip osteoarthritis, avascular necrosis, osteophyte formation, antalgic gait, limping gait, decreased hip range of motion, joint space narrowing, and physician's recommendation for hip replacement surgery—in the [RFC discussion] failed to build a logical bridge between this adverse evidence of possible disability and the ALJ's conclusion that Listing 1.02 was not met or medically equaled at Step 3. The ALJ did not provide any explanation regarding Claimant's ability to ambulate effectively even though the ALJ noted multiple instances from the medical record indicating an antalgic gait, a limping gait, use of a cane, and decreased range of motion in the hip.

*Id*. at *10. Despite all the evidence, the ALJ in *Jennifer M. L.* "failed to explain why th[e] evidence was rejected or was determined to be insufficient to meet or medically equal Listing 1.02." *Id*. Thus, the ALJ in that case failed to build the requisite bridge, and the case was remanded. *Jennifer M. L.* is nearly indistinguishable from the facts of this case. Plaintiff has hip and knee avascular necrosis, antalgic gait, decreased range of motion in the joints, chronic pain and stiffness, and uses various assistive devices for ambulation.  Yet, like in *Jennifer M. L.*, the ALJ here did not even mention this evidence at Step Three, nor provide any analysis as to why the evidence did not meet or medically equal Listing 1.02. (*Id.*) Accordingly, remand is necessary to properly consider whether Plaintiff's conditions medically equal Listing 1.02.

Next, Plaintiff argues that the RFC is not supported and lacks an accurate and logical bridge. The RFC is a determination of the most a claimant can do. Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is based upon consideration of "all relevant evidence in the case record." *Id*. at *5.  Merely "summarizing a medical history is not the same

20

thing as analyzing it, in order to build a logical bridge from evidence to conclusion." *Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *7 (N.D. Ill. Oct. 30, 2015). Likewise, an ALJ may not selectively consider medical reports, but must consider "all relevant evidence." *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). Even non-severe conditions must be included in the RFC. 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 404.1545(a)(2); SSR 96-8p, 1996 WL 374184, at *5.

In the present case, Plaintiff argues that the ALJ's Decision is unsupported because the ALJ overlooked or improperly rejected evidence. As noted above, the ALJ fundamentally misunderstood the evidence related to Plaintiff's mental impairments and, thus, never considered how Plaintiff's anxiety, pain, stress, chronic fatigue, and medications would further impact his RFC. *See Jesus F. v. Saul*, No. 1:18-cv-1072-DLP-TWP, 2019 WL 6872815, at *5 (S.D. Ind. Dec. 16, 2019) ("[T]he [Decision] provides no discussion of these other impairments and their impact on the [] RFC at all, an undertaking which constitutes clear error."); *see also* SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) ("Any impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC.").

Similarly, the ALJ did not adequately address whether Plaintiff would be absent from work or need to be off task, despite ample evidence that restrictions in these areas are necessary due to Plaintiff's chronic fatigue and pain. Dr. Yergler concluded that, due to his conditions, Plaintiff would be "off task in excess of 20% of the time" and would "likely miss two or more days [of work] per month" (Tr. 667). Nevertheless, the ALJ concluded that the "record does not contain consistent complaints of fatigue or the need to nap" (Tr. 16).

Plaintiff contends that the ALJ also erred in failing to determine whether Plaintiff requires a

sit/stand option given evidence that he stood only 45 minutes to an hour and was able to sit as

needed at his previous job (Tr. 44-45), lies down most of the day and elevates his leg to alleviate

swelling (Tr. 56), has throbbing low back pain with standing (Tr. 55), can only stand for 15 to 20

minutes before needing to lean on something or sit down (Tr. 59), cannot sit for long periods

without repositioning (Tr. 61), could not sit for 2 to 3 hours without elevating his leg or walking

around (Tr. 68-69), and lies down for 30 minute breaks during the day (Tr. 69). *See* SSR 96-9p,

1996 WL 374185, at *7 (July 2, 1996) ("The RFC assessment must be specific as to the frequency

of the individual's need to alternate sitting and standing."). The RFC here does not account for

any change in positions, despite the above evidence. The ALJ's omission of a sit/stand option is an

error.

Moreover, given the evidence of Plaintiff's bilateral femur and knee osteoarthritis/avascular

necrosis and back pain, there is no accurate and logical bridge with respect to the ALJ's restriction

to occasional balancing, stooping, kneeling, crouching, crawling, climbing of ramps and stairs, and

pushing/pulling with the lower extremities. *See Adams v. Berryhill*, No. 1:18-CV-291-PPS, 2019

WL 2591016, at *3-4 (N.D. Ind. June 24, 2019) (ALJ erred in finding that claimant could stand or

walk six hours in a workday and occasionally climb ramps and stairs and occasionally balance,

stoop, kneel, crouch, and crawl given claimant's degenerative disc disease, knee osteoarthritis, and

severe obesity). Further, in light of Plaintiff's shoulder issues, there is also no accurate and logical

bridge to the ALJ's conclusion that Plaintiff can occasionally reach overhead.

Additionally, Plaintiff requires the assistance of a walker, wheelchair, or scooter to

ambulate both within and outside his home (Tr. 228, 231, 245, 248), which is supported by the

evidence of his leg, knee, hip, and back problems. Given this evidence, the ALJ erred in entirely

failing to consider whether Plaintiff would need an assistive device in the workplace and how that would impact his RFC. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00(B)(2)(b)(2) (the Agency notes that "inability to carry out routine ambulatory activities, such as shopping" demonstrates ineffective ambulation); SSR 96-9p, 1996 WL 374185, at *7 (even periodic cane use must be considered by an ALJ).

Plaintiff also contends that the ALJ's conclusion that "[t]he objective record does not support the claimant's allegations of needing to use the bathroom at least 10 times per day" (Tr. 16) is not supported by the evidence. Plaintiff testified that he uses the toilet up to 20 times per day, generally every two hours for a few minutes up to 45 minutes at a time, but his bathroom needs vary due to his colitis. (Tr. 46-47.) And, although Plaintiff also testified that his colitis is "stable," he still uses the toilet approximately six times during the day. (*Id*.; Tr. 65.) Plaintiff's testimony is supported by the medical evidence. (Tr. 526-27, 667, 695-96). Thus Plaintiff concludes that there is no accurate and logical bridge to the ALJ's RFC that Plaintiff's ulcerative pancolitis and need for bathroom breaks can be accommodated by the 15-minute morning and afternoon breaks and 30-minute lunch period. *See e.g., Manker v. Berryhill*, No. 16 C 10704, 2017 WL 6569719, at *4 (N.D. Ill. Dec. 22, 2017) (the ALJ's failure to determine the frequency and duration of claimant's required bathroom breaks and the practical workday limitations resulting from the claimant's Crohn's requires remand).

Plaintiff also argues that the ALJ erred in her consideration of Dr. Yergler's opinion. Generally, the opinion of a treating source is entitled to controlling weight if (1) it is supported by objective evidence, and (2) is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527. The ALJ must provide "good reasons" for giving a treating source opinion less than

23

controlling weight. *See* 20 C.F.R. § 404.1527(c)(1) -(6). Failure to comply with this "treating physician rule" requires remand. *Scott v. Astrue,* 647 F.3d 734, 739 (7th Cir. 2011). Moreover, an ALJ cannot reject the opinion of an examining physician solely because of a contradictory opinion of a non-examining physician. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

In the present case, the ALJ gave "little weight" to Dr. Yergler's opinion that Plaintiff would likely miss two or more days [of work] per month . . . and would be off task in excess of 20% of the time" due to his conditions (Tr. 667), because the ALJ thought the opinion was "presented without context or reference to treatment notes supporting the allegations" (Tr. 17). This reason is not supported. First, Dr. Yergler's opinion is based on his examinations of Plaintiff (Tr. 666-67). Also, Dr. Yergler's opinion is supported by the objective findings from his own exams (Tr. 327-28, 666), and the findings of other providers (Tr. 283-84, 307-08, 464, 605, 773). Moreover, Dr. Yergler is an orthopedic surgeon (i.e., a specialist) whose opinion is entitled to more weight as it relates to limitations due to a medical issue in his area of specialty and Plaintiff's conditions. 20 C.F.R. § 404.1527(c)(5). Thus, Dr. Yergler's opinion is entitled to controlling weight under the regulations.

Plaintiff further claims that the ALJ erred in assessing Plaintiff's and third-party's statements. The ALJ's credibility analysis appears to be based solely on certain objective medical evidence and selected conclusions about Plaintiff's activities. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Here, the ALJ failed to properly analyze and discuss the abnormal findings from exams as discussed above, all of which support Plaintiff's statements.  The ALJ improperly rejected other evidence corroborating Plaintiff's symptoms. Pain, and much of Plaintiff's conditions, cannot be measured strictly by objective testing. *Carradine v. Barnhart*, 360 F.3d 751,

754 (7th Cir. 2004) ("Pain is always subjective.") Throughout the record, there is evidence that Plaintiff's pain limited his ability to perform daily tasks, even after injections, prescription medications, and a bilateral hip replacement. For these reasons, the ALJ erred in rejecting Plaintiff's statements and remand is necessary to address this error and the harm it caused in the Decision.

Plaintiff notes that the ALJ's bases for rejecting the statements of Plaintiff's mother (Tr. 67-69) and grandmother (Tr. 191-98, 242-49) are unsupported. First, a family member need not be medically trained to render an opinion. *Teschner v. Colvin*, No. 15 C 6634, 2016 WL 7104280, at *9 (N.D. Ill. Dec. 6, 2016) (regulations permit testimony from family members without requiring them to have medical training). Further, the Seventh Circuit has cautioned against reducing the weight of familial third-party reports merely because the possibility for bias exists. *See, e.g., Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (ALJ should have made clear whether he believed fiancé's testimony and, if so, which part(s)). Second, even if the third-party statements "echoed" Plaintiff's own statements, the Seventh Circuit recently affirmed that such statements are important corroborative evidence and must be considered. *Brinley v. Berryhill*, 732 F. App'x 461, 466 (7th Cir. 2018). Thus, the ALJ's reasons cannot serve as a valid basis to reject the third-party statements.

This Court holds that the RFC is not supported by substantial evidence because it does not accommodate all of Plaintiff's conditions. Because the ALJ did not properly address—or even address at all—highly pertinent, objective, clinical, and other evidence that contradicts the Decision, there is no "logical connection between the evidence and [her] conclusion[s] [in the RFC]." *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017); SSR 96-8p, 1996 WL 374184, at

*7 (The ALJ "must" describe how "the evidence supports each conclusion . . . ."). Here, the ALJ failed to support each conclusion in the RFC, and, thus, failed to build an accurate and logical bridge.

Indeed, the ALJ did not address whether Plaintiff would need to be absent or off task, despite evidence that such restrictions are necessary due to chronic fatigue and pain. This is crucial given Dr. Yergler's conclusion that Plaintiff would be "off task in excess of 20% of the time" and would "likely miss two or more days [of work] per month."  The Seventh Circuit recently made clear that ALJs must confront evidence that a claimant cannot meet the benchmarks for off-task behavior and absenteeism; failure to do so warrants remand:

> [T]he Commissioner argue[d] that Lothridge failed to identify which additional limitations were supported by the record. As the vocational expert testified, however, for Lothridge to be employable, she would need to be able to stay on task for at least 90% of the workday and to have minimal tardiness and only one absence per month. The ALJ neither cited evidence that Lothridge could meet these benchmarks nor addressed the evidence that she could not. *See Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019). The Commissioner proposes that the ALJ implicitly rejected that evidence by imposing no limitations beyond restricting Lothridge to simple tasks and decisions. But this attempt to supply a post-hoc rationale for the ALJ's decisive findings runs contrary to the *Chenery* doctrine. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87–88, 63 S.Ct. 454, 87 L.Ed. 626 (1943); Parker, 597 F.3d at 922. The record also contains evidence of additional limitations—such as a need for frequent breaks and accommodations for poor concentration and focus—that the ALJ was obliged to consider. *See Young v. Barnhart*, 362 F.3d 995, 1002–03 (7th Cir. 2004).

*Lothridge v. Saul*, 984 F.3d 1227, 1234-35 (7th Cir. 2021).  Here, the VE specifically testified that (1) being off task more than 10% of the workday, (2) missing more than two days of work per month, or (3) arriving late or leaving early would preclude all work.  Yet, like in *Lothridge*, the ALJ failed to consider whether Plaintiff could meet these benchmarks, particularly in light of the evidence suggesting that he cannot.

Likewise, the ALJ erred in failing to determine whether Plaintiff requires a sit/stand option in light of ample evidence justifying the need for such a limitation. Further, given the evidence of Plaintiff's avascular necrosis/osteoarthritis of the knees and femurs and back pain, there is no accurate and logical bridge between the evidence and the ALJ's restriction to occasional balancing, stooping, kneeling, crouching, crawling, climbing of ramps and stairs, and pushing/pulling with the lower extremities. And, despite evidence that Plaintiff requires an assistive device, the RFC fails to address whether Plaintiff would need an assistive device in the workplace.

Further, despite evidence that Plaintiff's bathroom needs could not be accommodated by standard breaks, the ALJ concluded that "[t]he objective record does not support the claimant's allegations of needing to use the bathroom at least 10 times per day." This is both unsupported by the record and ignores the reality that Plaintiff's bathroom needs would likely change day to day such that standard breaks would not always accommodate it.

The Commissioner suggests that because, at one appointment, Plaintiff stated that he did not "feel the need to use" Lomotil, a prescribed anti-diarrheal medication, the ALJ was justified in concluding that Plaintiff's condition could be accommodated with normal breaks. The Commissioner's argument and reliance on *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992) is misplaced. First, it ignores that although Plaintiff reported not needing Lomotil on one occasion, he was on routine treatment for bowel incontinence with a separate medication that he had been taking since his colon surgery in late 2017. (Tr. 695, 697-99.) Second, *Ehrhart* stands for the proposition that an ALJ may permissibly find a lack of total disability "when a claimant inexcusably refuses to follow a prescribed course of medical treatment that would eliminate his total disability." 969 F.2d at 538. There is no evidence that, had Plaintiff

27

taken Lomitil, his bathroom needs would have changed, nor that his colitis would have somehow been eliminated. Thus, *Ehrhart* is factually distinguishable.

The Commissioner also asserts that Plaintiff's statements about his symptoms, specifically pain and fatigue, cannot undermine the ALJ's RFC. The Commissioner's argument is unavailing. Pain and fatigue, which are the basis for many of Plaintiff's limitations, cannot always be measured on objective tests. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004).

In any event, Plaintiff pointed to specific clinical findings and their impact on his functioning, all of which serve as evidence for the RFC, and warranted restrictions. For example, because the ALJ dismissed Plaintiff's mental impairments at Step Two, she did not account for them at all in the RFC. Even if non-severe, these conditions should have been factored into the RFC. *See* 20 C.F.R. § 404.1545(a)(1) (RFC is based on all the relevant evidence in your case record); *id*. § 404.1545(a)(2) (we will factor non-severe conditions into the RFC).

Next, Plaintiff argues that he Agency failed to meet its burden, at Step Five, to show there is other work in significant numbers that the individual can perform. *See* 20 C.F.R. § 404.1520. here. Plaintiff argues that, in light of the ALJ's failure to properly consider all the evidence, there is no assurance that Plaintiff can perform the jobs identified by the VE. In *Varga*, the Seventh Circuit noted that "in this circuit, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." 794 F.3d at 813. Here, neither the RFC nor the hypotheticals posed to the VE incorporated all of Plaintiff's limitations (i.e., appropriate restrictions on sitting, standing, and walking, allowance for an assistive device, more restrictive postural and manipulative limitations, a sit/stand option, and restrictions to account for Plaintiff's mental impairments). Consequently, the occupations

28

identified do not accurately reflect jobs Plaintiff can perform. Even if Plaintiff were found capable of "sedentary" work, the jobs identified by the VE (Inspector, Sorter, and Addressing Clerk) all require frequent reaching and handling, which is inconsistent with Plaintiff's limitations related to his shoulder and elbow issues and the ALJ's own restriction to occasional reaching overhead. Given the errors above, remand is needed to properly evaluate the evidence and RFC and present it to a VE who can consider all the limitations.

Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: March 1, 2021.

s/ William C.  Lee
William C. Lee, Judge
United States District Court